**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Keidronn SANDERS, Defendant–Appellant.**

**No. 97–6095.**

United States Court of Appeals, Sixth Circuit.

Argued July 22, 1998.

Decided Dec. 7, 1998.

---

Thomas W. Watson, Assistant Federal Public Defender (argued and briefed), Nashville, Tennessee, for Defendant–Appellant.

Sunny A.M. Koshy (argued and briefed), Office of U.S. Attorney, Nashville, Tennessee, for Plaintiff–Appellee.

Before: KENNEDY and RYAN, Circuit Judges; BORMAN, District Judge.[*]

BORMAN, D. J., delivered the opinion of the court, in which RYAN, J., joined. KENNEDY, J. (pp. 403–05), delivered a separate opinion concurring in part and dissenting in part.

## OPINION

BORMAN, District Judge.

Defendant Kiedronn Sanders appeals from the district court sentence that imposed two upward adjustments under U.S. Sentencing Guidelines, § 2K2.1(b)(5) unlawful possession of firearms,[1] and § 3C1.1 obstruction of justice.[2]

*BACKGROUND*

Defendant was charged in a superceding indictment on January 15, 1997 with three counts of firearms offenses:

Count 1. stealing firearms from a licensed firearms dealer in violation of 18 U.S.C. §§ 922(u), 924(i)(1), and 2.

Count 2. knowingly transporting stolen firearms in violation of 18 U.S.C. §§ 922(i), 924(a)(2), and 2.

Count 3. being a convicted felon in possession of firearms in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

On April 17, 1997, Defendant Sanders plead guilty to counts 2 and 3, pursuant to a

[*] The Honorable Paul D. Borman, United States District Judge for the Eastern District of Michigan, sitting by designation.

[1] The pertinent portion of U.S. Sentencing Guidelines Manual § 2K2.1(b)(5)(1997) states: If the defendant used or possessed any firearm or ammunition in connection with another felony offense ... increase by 4 levels.

[2] The pertinent portion of U.S. Sentencing Guidelines Manual § 3C1.1(1997) states: If the defendant willfully obstructed ... the administration of justice during the investigation, prosecution or sentencing of the instant offense, increase the offense level by 2 levels.

Rule 11 plea agreement. Pursuant to both his Petition to Enter a Plea of Guilty, and U.S. Sentencing Guideline § 1B1.3 which deals with relevant conduct, his conduct in stealing the firearms was to be utilized in determining his proper offense level under the Guidelines.[3] In addition, the Government Brief on Appeal acknowledges that other offenses such as the theft of the firearms, were properly included in the relevant conduct calculations for the instant offense:

> The United States agrees with the defendant's position that the burglary and other theft offenses the defendant committed at Household Pawn Shop would be included in the relevant conduct of the two counts to which the defendant pleaded guilty.

Gov't Brief on Appeal, P.12, n. 3.

Over Defendants objections, the district court at the sentencing hearing imposed two upward adjustments to the offense level calculations:

1. a four level increase for possession of firearms in connection with another felony, pursuant to United States Sentencing Guideline § 2K2.1(b)(5). (App. P.36)

2. a two level upward adjustment for obstruction of justice, pursuant to United States Sentencing Guideline § 3C1.1. (App.P.10)

The district court sentenced Defendant Sanders to a 96 month term of incarceration on each count, sentences to run concurrently.[4]

Defendant Sanders contends that the district court improperly increased his offense level under each of the two aforementioned guideline provisions. For the reasons that follow, we REVERSE the four level upward

---

**3.** If I am charged with more than one offense, I understand that the sentencing guidelines take this into consideration and may result in a longer sentence whether or not I plead guilty to more than one offense.

Petition To Enter A Plea of Guilty, App. P.16.

**4.** The Judgment and Commitment Order set forth the following Guideline range:

| | |
|---|---|
| Total Offense Level: | 25 |
| Criminal History Category: | IV |
| Imprisonment Range: | 84–105 months |
| Supervised Release Range: | 2 to 3 years |

increase under § 2K2.1(b), AFFIRM the upward two level adjustment under § 3C1.1, and REMAND to the district court for resentencing.

*FACTS:*

> *First Issue: 4 Level Increase—*
> *Guideline § 2K2.1 (b)(5)*

Defendant Sanders joined with co-conspirators to burglarize the Household Pawn Shop which sold firearms, electronics and other items in Nashville, Tennessee. Sanders, thereafter, placed some of the stolen firearms and electronics in his car and, accompanied by Jonathan Daviss, drove north toward Detroit, Michigan.

In Lima, Ohio, an Ohio State Trooper pulled him over for traffic violations. Special Agent Todd Henry described the subsequent happenings in Lima, Ohio, as follows:

> After observing marijuana in plain view, the Ohio state troopers conducted a search of the vehicle and recovered 73 handguns and rifles, three black powder weapons, electronics equipment and burglary tools.

Appendix P. 107. (Transcript of Plea Proceeding, April 17, 1997).

At the sentencing hearing, FBI Special Agent Terry Haverson testified that all of the firearms and electronics items seized from Sanders were stolen at the same time. App. p. 131.

The Government acknowledges this issue to be whether the § 2K2.1(b)(5) enhancement applies "when the other felony offense occurs contemporaneously with the firearms offense." Government Brief on Appeal, P.iv.

. . .

Restitution:         $ 22,081.13

... [T]he court departed [down] one level to level 24 upon granting the government's motion ... for departure based upon the defendant's substantial assistance.

Judgment and Commitment Order, App. P.59. Thus, Defendant's sentencing factors were Total Offense Level 24 and Criminal History Category IV, yielding a sentencing range of 77–96 months. Defendant was sentenced to 96 months incarceration, the top of his range.

*Second Issue: 2 Level Increase— Guideline § 3C1.1*

At his plea hearing, Defendant Sanders denied that he had joined with other conspirators to enter the pawnshop to commit the burglary. The relevant testimony at the plea hearing is as follows:

> Court: And do you further understand that if you do not speak the truth, if you lie or make a false statement here in court, you can be punished as provided by law?
>
> Sanders: Yes.

App. P.66.

. . . .

> Sanders: So they approached me and asked me what am I going to do if I help them do something. Meaning the rest of those goods *that they had already gotten* because their car was already full and they wanted to unload their car and go back there [to the pawn shop].... I also helped load them things up.
>
> Court: What things?
>
> Sanders: Firearms and electronics.

App. P.99. (emphasis added).

> I pulled up, threw the stuff in the car, loaded up and pulled out and left.

App. P.100.

. . . .

> Court: Then what happened?
>
> Sanders: Well, we made all the way to Ohio and a trooper pulled behind us, for about a mile, and pulled me over.

. . . .

> Court: Alright. Is there anything else to this?
>
> Sanders: No.

App. P.102.

*DISCUSSION:*

■ The two issues on appeal involve a legal interpretation of guideline terms—"another felony offense," and "obstruction of justice"—and are therefore reviewed *de novo.*

In *United States v. Hayes*, 135 F.3d 435, 437 (6th Cir.1998) the Sixth Circuit stated:

> We review *de novo* a district court's application of the Sentencing Guidelines when

the application involves mixed questions of law and fact. See *U.S. v. Mills*, 1 F.3d 414, 421 (6th Cir.1993).

The Sixth Circuit has stated that "the question as to whether defendants' conduct constitutes obstruction of justice, 'turns primarily on the legal interpretation of a guideline term' and is thus reviewed *de novo.* *U.S. v. Stroud*, 893 F.2d 504, 507 (2d Cir. 1990)." *U.S. v. Sanchez*, 928 F.2d 1450, 1459 (6th Cir.1991). For the same reason, the district court's interpretation of the Guideline term "another felony offense" must be reviewed *de novo.*

*Issue 1: § 2K2.1(b)(5) Adjustment*

■ Defendant Sanders claims that because he "did not use or possess the firearms in connection with another felony offense, the district court improperly applied U.S.S.G. § 2K2.1(B)(5) in this case." Appellant's Brief P.11. That Guideline states:

> If the defendant used or possessed any firearms or ammunition in connection with another felony offense ... increase by 4 levels.

Application Note 18 to Guideline 2K2.1 states:

> As used in subsections (b)(5) and (c)(1), "another felony offense"... refer to offenses other than ... firearms possession or trafficking offenses. However, where the defendant used or possessed a firearm or explosive to facilitate another firearms or explosives offense (*e.g.*, the defendant used or possessed a firearm to protect the delivery of an unlawful shipment of explosives), an upward departure under § 5K2.6 (Weapons and Dangerous Instrumentalities) may be warranted.

Guideline 2K2.1 speaks of possessing the firearms in connection with "another felony offense." The relevant portion of Application Note 18 states that "another felony offense" refers to offenses other than the firearms possession or trafficking offenses.

In this case there was one offense—the burglary of the pawnshop—which resulted in Defendant's possession of the instant firearms. There was no allegation that Defendant Sanders possessed any firearms when

he entered the pawnshop. Nor was there any allegation that Defendant Sanders utilized any of the stolen firearms to commit any crimes after the theft. Basically, Defendant Sanders swept up many valuables from the pawnshop, and those valuables included both firearms and non-firearms.

Defendant's theft of the firearms was included as relevant offense conduct in his presentence report. App. pp. 30–34, 36, 45.[5] Indeed, he received a two level enhancement pursuant to § 2K2.1(b)(4) specifically because the firearms had been stolen. App. P.36. Thus, there is no question but that the theft at the Household Pawn Shop was part and parcel of his plea conviction.

This Court concludes that the language of Guideline 2K2.1 and Application Note 18 mandate our finding that the district court erred in increasing Defendant Sander's base offense level upward by four levels under Guideline § 2K2.1(b)(5). The district court applied the four-level enhancement because Defendant Sanders burglarized the firearms, a factor that had already been taken into account in his Sentencing Guideline calculations: § 2K2.1(a)(6) prohibited person, § 2K2.1(b)(1)(F) 50 or more firearms, and § 2K2.1(b)(4) stolen firearms.[6] The Guidelines do not authorize a major four-level increase under the instant facts simply because the state also could have brought a prosecution for the one and the same burglary.

■ A logical reading of the § 2K2.1(b)(5) Guideline term "another felony offense"

would at least require, as a condition precedent to the application of a major four level guideline enhancement, a finding of a separation of time between the offense of conviction and the other felony offense, or a distinction of conduct between that occurring in the offense of conviction and the other felony offense. Otherwise, the word "another" is superfluous,[7] and of no significance to the application of that provision. In the instant case, there was no separation of time, or distinction in conduct between the instant offense and the state burglary offense.

Most offenses can be prosecuted under multiple provisions of the federal and state laws. The mere fact that Defendant Sanders could also have been prosecuted for a state offense for his conduct at the time he committed the offense charged in the federal indictment does not support a finding that, under Guideline § 2K2.1(b)(5), he committed "another felony offense" when he burglarized the pawn shop. To adopt such a conclusion would permit the automatic application of this significant 4 level Guideline enhancement in almost every federal gun theft case. There is no evidence in the Guidelines that the Commission intended this significant enhancement to be applied in almost every firearm theft case.

■ Thus, we conclude that the Government has failed to meet its burden of proving that this enhancement applies to the instant fact situation.[8] Neither the language of Guideline § 2K2.1(b)(5), nor that of Applica-

---

**5.** The Presentence Report set forth that the offense at issue involved the burglary of the Household Pawn Shop.App. P.30. The "Specific Offense Characteristics" section of the presentence report stated that "A total of 103 firearms were stolen from the Household Pawn Shop...." App. P.36.

**6.** Apart from the § 2K2.1(b)(5) enhancement at issue, the Presentence Report guideline calculations, which were adopted by the district court in the Judgment and Commitment Order, App. P.59, were: Base Offense Level of 14 under Guideline 2K2.1, Unlawful Receipt, Possession, or Transportation of Firearms by a prohibited person (convicted felon); plus two Specific Offense Characteristic enhancements: a six level increase because he possessed 50 or more firearms; a two level increase because the firearms were stolen. Presentence Report App. P.36.

**7.** The Supreme Court has stated:

Congress is not to be presumed to have used words for no purpose.... [T]he admitted rules of statutory construction declare that a legislature is presumed to have used no superfluous words. Courts are to accord a meaning, if possible, to every word in a statute. *Platt v. Union Pacific Railroad Co.*, 99 U.S. 48, 58, 25 L.Ed. 424 (1878), quoted with approval in *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 507, 133 L.Ed.2d 472 (1995). This language applies, as well, to the language of the U.S. Sentencing Guidelines. See Title 28 U.S.C. § 994(P).

**8.** "The government bears the burden of establishing enhancement factors by a preponderance of the evidence." *United States v. Lewis*, 156 F.3d 656 (6th Cir.1998).

tion Note 18 supports the interpretation that "another felony offense" includes the possibility of prosecution for a state offense arising from the same conduct.

This Court declines to follow *U.S. v. Armstead,* 114 F.3d 504 (5th Cir.1997), cert. denied — U.S. ——, 118 S.Ct. 315, 139 L.Ed.2d 243 (1997), in which the Fifth Circuit applied the 2K2.1 enhancement to a similar fact situation. The Fifth Circuit stated that it "could unearth no other circuit court decision which has directly addressed this issue." 114 F.3d at 512. This is an issue of first impression in the Sixth Circuit. We conclude that the Fifth Circuit erred in applying this enhancement.

In *Armstead,* the district court enhanced sentences of the defendants, the brothers Armstead, under " § 2K2.1(b)(5) on the ground that they possessed firearms in connection with 'another felony offense,' the state law crime of burglary of a building." *Id.* at 505. Notably, unlike the facts of the instant case, the Armsteads had also been charged by the State of Texas for the contemporaneous burglary of the building. The Fifth Circuit concluded that the contemporaneous robbery of the firearms could be treated as two separate offenses under the Guidelines—a federal stealing-of-firearms offense, 18 U.S.C. § 922(u), and a state burglary offense—and that the state burglary offense could comprise the requisite "another felony offense" under Guideline § 2K2.1(b)(5). *Id.* at 513.

The Fifth Circuit held "that the Armstead's possession of firearms was 'in connection with' their state law burglary crime," and that crime constituted another felony offense under § 2K2.1. The Fifth Circuit posited the question:

> The dilemma arises when we ascertain whether the burglary constituted "another" offense even though it arose contemporaneously with the primary offense, theft of firearms from a licensed firearms dealer.

*Id.* at 512.

The instant issue is similar to that raised before the Fifth Circuit, but this Court concludes that the language of Guideline § 2K2.1(b)(5) and its Application Note 18 mandates that we reach a contrary conclusion.

The Commentary to Guideline § 2K2.1, in Application Note 18, explicates that "another felony offense" refers to offenses other than the firearms possession offense. The Supreme Court unanimously held, in *Stinson v. United States,* 508 U.S. 36, 38, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993) that Guideline Commentary is authoritative:

> We decide that commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline.

This Commentary contained in Application Note 18 should be treated as authoritative in that it does not violate the Constitution or a federal statute, nor is it inconsistent with, or a plainly erroneous reading of guideline § 2K2.1. Beyond the contemporaneous burglary in the instant case, there was not "another felony offense," and that burglary was the basis for the federal firearms offenses charged.

There is no justification to authorize a scanning of state statutes to ascertain if this particular offense violated any additional criminal statutes, and then to utilize that finding to enhance the sentence on the ground that defendant had, then and there, also committed another felony offense.

It also bears noting that the enhancement contained in § 2K2.1(b)(5) is a four-level enhancement, one that the Sentencing Commission applies in the case of egregious criminal behavior, e.g. U.S. Sentencing Guideline 3B1.1(a), which applies a four level increase to the offense level if "the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." Guideline B1.1(a) also provides for three and two level increases for individuals with lesser involvement in the criminal activity. No such egregious criminal behavior is present here, and the Guidelines already account for the firearms theft behavior in the Relevant Conduct Base Offense Level of 14, and the Additional Specific Offense Characteristics that take into ac-

count the number of firearms involved and most important, the fact that they were stolen. Accordingly, the Court declines to adjust Defendants offense level upward by four levels for contemporaneous conduct already included in the Guideline calculations. Had Defendant committed "another felony offense" subsequent to his burglary of the pawn shop, the plain language of Guideline 2K2.1(b)(5) and Application 18 would apply. But under the instant facts, it was erroneous for the district court to add a four level increase to Defendants offense level.

■ In addition, the rule of lenity should clearly be utilized to prevent the application of the enhancement where, as here, there is no clear language in the Guideline or the Commentary to support that increased sentence. The Supreme Court stated in *McNally v. U.S.*, 483 U.S. 350, 359-60, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987):

> The Court has often stated that when there are two rational readings of a criminal statute, one harsher than the other, we are to choose the harsher only when Congress has spoken in clear and definite language.

In the instant case, we conclude that there are not two rational readings of the Guideline and its accompanying commentary in Application Note 18. Even if one could conclude that there were two rational readings of this Guideline, this Court would be bound to choose the less harsh reading, and overrule the four level enhancement. We believe that the Sentencing Commission has spoken clearly that "another felony offense" means an offense occurring apart from the conduct that produced the federal offense of conviction. The conduct that produced the offense of conviction was the burglary of the pawnshop—the same conduct which the district court utilized to enhance the offense level.

Accordingly, we hold that the district court erred in applying Guideline § 2K2.1(b)(5) to enhance the defendants offense level by four levels.

*Issue 2: § 3C1.1 Adjustment*

■ U.S. Sentencing Guideline § 3C1.1 provides for a two level increase in the offense level if the defendant willfully obstructed, or attempted to obstruct the administration of justice during the prosecution or sentencing of the case. That Guideline's Commentary, Application Note 3(f) states:

> 3. The following is a non-exhaustive list of examples of the types of conduct to which this enhancement applies:
>
> . . .
>
> (f) providing materially false information to a judge.

In the instant case, the Defendant, under oath, stated to the district court at his plea proceeding, that he did not come onto the scene until after the goods had been stolen from the pawn shop and loaded into the burglars' automobile. App. P.66. In response to the judge's question: "Is there anything else to this?", the Defendant responded "No." App. P.102.

The district court found Defendant's statements to be materially misleading with regard to his full involvement in this case:

> He left the court under the impression that he wasn't a participant in that burglary, that he just took possession of those weapons that we deposited in the church yard or the woods adjacent to the church yard next to this pawn shop.... [H]e mislead the court about the totality of his involvement in the case and it was material to the court's understanding and assessment of the totality of his involvement.

App. Pp.145, 146.

The Supreme Court has recognized that "an accused may give inaccurate testimony due to confusion, mistake, or faulty memory." *United States v. Dunnigan*, 507 U.S. 87, 95, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993).

In addition, Application Note 1 to U.S. Sentencing Guideline § 3C1.1 states:

> In applying this provision in respect to alleged false testimony or statements by the defendant, the court should be cognizant that inaccurate testimony or statements may sometimes result from confusion, mistake or faulty memory, and thus, not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice.

Nevertheless, this Court concurs with the district court's finding that Defendant's plea testimony was not inaccurate or confusing, but intentionally and materially false as required under Guideline § 3C1.1. This Court finds that the evidence supports the determination of the district court, that the transcript of Defendant's plea hearing clearly establishes that he provided materially false information to the judge. This was not a situation, as Defendant asserts, where he provided, at most, incomplete information.

The district court's determination of the materiality of Defendant's false testimony was correct, insofar as it related directly to his role in the offense under U.S. Sentencing Guidelines §§ 3B1.1 and 3B1.2. See *U.S. v. Crousore,* 1 F.3d 382, 385 (6th Cir.1993).

The district court made the proper sentencing record by reviewing the evidence set forth in the plea transcript, and made the "independent findings necessary to establish a willful ... obstruction of justice." *Dunnigan* at 95, 113 S.Ct. 1111. As in *Dunnigan,* there was ample support for the district court's finding on this issue.

*CONCLUSION*

For the foregoing reasons, we REVERSE the district court's decision to apply a four level increase in Defendant's offense level pursuant to U.S. Sentencing Guideline 2K2.1(b)(5), AFFIRM the decision to apply the two level upward adjustment pursuant to Guideline § 3C1.1, and REMAND for resentencing.

KENNEDY, Circuit Judge, concurring in part and dissenting in part.

I concur in that portion of the panel's opinion that affirms the District Court's two-level increase in the offense level for obstruction of justice. However, I respectfully dissent from the reversal of the four-level increase for possession of firearms in connection with another felony pursuant to United States Sentencing Guideline ("U.S.S.G.") 2K2.1(b)(5).

The panel treats the issue of whether there is "another felony offense" as an issue of law. I believe that whether defendant used or possessed any firearms in connection with another felony offense is first a question of fact.

Defendant was charged with committing three firearms violations on November 17, 1996: 1) theft of firearms from a federally licensed firearms dealer, in violation of 18 U.S.C. § 922(u) (Count One); 2) possession of stolen firearms, in violation of 18 U.S.C. §§ 2, 922(j) (Count Two); and 3) possession of firearms by a convicted felon, in violation of 18 U.S.C. § 922(g) (Count Three). Defendant pled guilty to Counts Two and Three on April 7, 1997.

During the plea colloquy, the District Court asked defendant to explain his role in the offense and why he was pleading guilty. Defendant stated that he had run into some acquaintances from Detroit at a nightclub in Nashville. The acquaintances told him that their car was full of stolen firearms and electronic equipment and asked whether he would load and transport the property in his car back to Detroit. Defendant recounted his involvement as follows:

Sanders: So they approached me and asked me what am I going to do if I help them do something. Meaning the rest of these goods that they had already gotten because their car was already full and they wanted to unload their car and go back [to the pawn shop].... I pulled up, threw the stuff in the car, loaded up and pulled out and left.

The Court: Where did you go?

Sanders: We went back to the hotel they were staying at, because they wanted to leave .... so back to their hotel room we talked for a minute, saying leave now, you get back [to Detroit], I call you back, separate everything, give you some money....

....

The Court: Then what happened?

Sanders: That's when we parted company.

....

The Court: Then what happened?

Sanders: Well, we made all the way to Ohio and a trooper pulled behind us, for about a mile, and pulled me over.

....

The Court: Alright. Is there anything else to this?

Sanders: No.

After the plea hearing, defendant submitted to a polygraph examination as required by the plea agreement. The results of the test indicated that he had been deceptive regarding his participation in the burglary and theft. Defendant then admitted that he had lied in previous statements. He confessed that he had accompanied his acquaintances to the Household Pawn Shop following their initial burglary of the premises. He entered the pawn shop through the roof, proceeded to the office area, and stood on a filing cabinet. There, defendant received items handed to him by others which he then passed up through the hole in the roof. He stated that he passed up four or five armloads of items, including a gym bag containing firearms. Defendant explained that he withheld this information during the plea colloquy because he feared that admitting the extent of his involvement "would be worse for him as far as the charge was concerned."

Defendant argues that U.S.S.G. § 2K2.1(b)(5) applies only when "a defendant uses or possesses a firearm in an offense not the same as the offense for which he stands in court" and that no separate felony existed in this case. However, the record reveals otherwise. Defendant pled guilty to possession of stolen firearms and possession of firearms by a convicted felon; these are the only offenses for which he stands in court. The burglary of the Household Pawn Shop, to which defendant admitted, constitutes the other felony offense.[1] Since defendant clearly possessed the firearms during the commission of a separate felony offense, the burglary, I now turn to whether the District Court was justified in finding that possession was "in connection with" that offense.

A firearm is used or possessed "in connection with" an offense if the weapon facilitated or potentially facilitated the felonious conduct, or emboldened the defendant during the felonious conduct. *United States v.*

*Spurgeon,* 117 F.3d 641, 643–44 (2nd Cir. 1997); *United States v. Wyatt,* 102 F.3d 241, 247 (7th Cir.1996); *United States v. Nale,* 101 F.3d 1000, 1003–04 (4th Cir.1996); *United States v. Collins,* 90 F.3d 1420, 1430 (9th Cir.1996); *United States v. Thompson,* 32 F.3d 1, 7 (1st Cir.1994); *United States v. Gomez–Arrellano,* 5 F.3d 464, 466–67 (10th Cir.1993). *Cf. Armstead,* 114 F.3d 504, 511–13 (5th Cir.1997) (finding that firearms stolen during burglary were possessed "in connection with" that offense under the possession test, which is less stringent than the facilitation or emboldenment standard). In this case, the District Court specifically determined that defendant's possession of the stolen firearms emboldened him during the burglary. As this factual finding was not clearly erroneous, the enhancement under U.S.S.G. § 2K2.1(b)(5) for possession of a firearm in connection with another felony was, I believe, appropriate.

The panel argues that the two-level enhancement for possession of a gun that has been stolen changes the crime with which defendant has been charged into a burglary case. U.S.S.G. Section 2K2.1(b)(4) applies whether defendant stole the gun or someone else did. U.S.S.G. Section 2K2.1(b)(6) applies when, as here, the guns were stolen by defendant in another felony and defendant possessed the firearm in connection with the commission of that other offense.

Application Note 14 to U.S.S.G. § 2K2.1 provides:

> Under subsection (c)(1), the offense level for the underlying offense (which may be a federal, state, or local offense) is to be determined under § 2X1.1 (Attempt, Solicitation, or Conspiracy) or, if death results, under the most analogous guideline from Chapter Two, Part A, Subpart 1 (Homicide).

U.S.S.G. § 2K2.1 n. 14.

I would, however, find that to increase defendant's offense level two points because the guns are stolen and then to increase it four more because he stole the guns does

---

1. One might argue that the burglary cannot serve as another felony offense because it preceded the theft, and therefore possession, of the firearms. However, the burglary was a continuous offense which ended only when Sanders and his acquaintances departed from the pawn shop. *See United States v. Armstead,* 114 F.3d 504, 510–511 (5th Cir.1997).

strike me as double counting. I would, therefore, reduce the overall increase of six points by two points, to arrive at a total enhancement of four levels.