**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-4582
_____

UNITED STATES OF AMERICA

v.

ANGELITA ADAMES,
                              Appellant
_____


On Appeal from the United States District Court
for the District of New Jersey
(No. 1-10-cr-00686-002)
District Judge:  Honorable Noel L. Hillman

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
May 20, 2014

_____


Before:  McKEE, Chief Judge, CHAGARES, and NYGAARD, Circuit Judges.


(Filed: June 2, 2014)


_____

OPINION
_____

CHAGARES, Circuit Judge.

Angelita Adames ("Adames") appeals the thirty-month sentence she received after pleading guilty to conspiracy to defraud the United States. For the following reasons, we will affirm.

I.

We write solely for the parties and will therefore recount only those facts that are essential to our disposition. On March 11, 2011, Adames pleaded guilty to a one-count indictment charging her and her husband, Jose Adames ("Jose"),[1] with conspiring to defraud the United States by fraudulently obtaining and cashing federal income tax refund checks in violation of 18 U.S.C. § 286. The Adameses cashed 102 refund checks worth approximately $668,298.00. The Probation Office's draft Presentence Investigation Report ("PSR") assigned Adames a total offense level of eighteen and a criminal history category of I, yielding an advisory Sentencing Guidelines range of twenty-seven to thirty-three months of imprisonment. The recommended offense level included a two-level downward adjustment for acceptance of responsibility under United States Sentencing Guideline ("U.S.S.G.") § 3E1.1(a).

Both parties filed objections to the draft PSR. The Government asserted that Adames qualified for a two-level downward adjustment for her minor role in the conspiracy but was subject to a two-level enhancement for obstruction of justice for inaccurately minimizing her role in the conspiracy during her plea colloquy. Id. §§

_____

[1] Jose was convicted after a jury trial and was sentenced to thirty-three months of imprisonment on November 18, 2011. This Court affirmed his judgments of conviction and sentence.

3B1.2(b), 3C1.1. Adames requested a four-level downward adjustment for her minimal role in the conspiracy, id. § 3B1.2(a); an additional one-level downward adjustment for acceptance of responsibility, id. § 3E1.1(b); and a "substantial" downward departure due to, inter alia, her role as primary caretaker of five minor children, id. § 5K2.0. Appendix ("App.") 11–12.[2] Adames separately opposed the proposed enhancement for obstruction of justice, contending that statements made in a plea colloquy are not "material" for purposes of the enhancement, see U.S.S.G. § 3C1.1 cmt. nn.4(F), 6. App. 15–18. The Probation Office determined that a role reduction was unwarranted,[3] and it referred the obstruction enhancement to the District Court. The court conducted a hearing on the parties' sentencing objections on November 17, 2011.

At Adames's sentencing hearing, which was held on December 19, 2011, the District Court imposed the two-level enhancement for obstruction of justice but granted the two-level downward adjustment for acceptance of responsibility. App. 56–60, 64. The court denied a minor or minimal role downward adjustment. App. 60–61. Adames's total offense level of twenty, combined with her criminal history category of I, yielded an advisory Guidelines range of thirty-three to forty-one months of imprisonment. After considering the factors set forth in 18 U.S.C. § 3553, the court imposed a below-Guidelines sentence of thirty months of imprisonment, plus a three-year term of

---

[2] Adames later abandoned her requests for a minimal role adjustment and for a § 5K2.0 departure, seeking only a minor role adjustment. See App. 64–65; Supplemental Appendix ("Supp. App.") 37–38.

[3] The Government ultimately agreed with this assessment. App. 21.

supervised release, a $100 special assessment, and $668,298.73 in restitution.  App. 81,

83, 84.  Adames timely appealed.

## II.[4]

Adames challenges the District Court's imposition of an enhancement for

obstruction of justice on the basis that statements made during a plea colloquy are not

material for purposes of the Guideline.  We review factual findings relevant to the

District Court's application of the Guidelines for clear error and exercise plenary review

over the court's interpretation of the Guidelines.  United States v. Grier, 475 F.3d 556,

570 (3d Cir. 2007) (en banc).  The facts underlying a sentencing enhancement need only

be proven by a preponderance of the evidence.  See United States v. Johnson, 302 F.3d

139, 154 (3d Cir. 2002).

Section 3C1.1 instructs sentencing courts to increase a defendant's offense level

by two levels if:  (1) the defendant "willfully obstructed or impeded, or attempted to

obstruct or impede, the administration of justice with respect to the investigation,

prosecution, or sentencing of the instant offense of conviction"; and (2) the obstructive

conduct related to the defendant's offense of conviction or a "closely related" offense.

The enhancement applies to defendants who provide materially false information to a

district court.  Id. § 3C1.1 cmt. n.4(F).  "Material" information is information that "if

believed, would tend to influence or affect the issue under determination."  Id. § 3C1.1

cmt. n.6.  "In applying this provision . . . , the court should be cognizant that inaccurate

---

[4] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have appellate jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

testimony or statements sometimes may result from confusion, mistake, or faulty memory and, thus, not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice." Id. § 3C1.1 cmt. n.2.

At Adames's March 11, 2011 guilty plea hearing, the District Court placed Adames under oath and questioned her extensively about her role in the transportation of the fraudulently obtained refund checks from New York to Imperial Check Cashing ("ICC") in Camden, New Jersey. The following exchange occurred between the court and Adames:

> Q: Did one of your, one or more of your co-conspirators first bring the income tax refund checks from New York to southern New Jersey?
> A: Yes, Your Honor.
> Q: And was one of those co-conspirators who brought those checks to you[] a woman named Fefa[5]?
> A: Yes, Your Honor.
> . . .
> Q: Okay. And did she have the checks with [her] when you met her?
> A: She used to give them to me in a sealed envelope so I could take it to the manager and the cashier and the manager from the cashier used to give me a call when a sealed package [sic] so I could give it to Fefa.
> Q: Okay. And <u>did you know what was in the sealed package</u>?
> A: <u>No, Your Honor</u>.
> Q: Okay. When I say the sealed package, did you know what was in the sealed package that you got from Fefa?
> . . .
> A: <u>In the beginning, no, Your Honor</u>. But then I learned that, [y]es, I knew what was in it.
> . . .
> Q: Okay. So at some point you came to learn what was in the packages.
> A: Yes, Your Honor.
> Q: And continued to do it?
> A: Yes, Your Honor.
> Q: All right. The package coming back that was sealed, what was in that?

---

[5] Also spelled throughout the record as "Fayfa" and "Fafa."

A:  I didn't know until the discovery and everything, but I'm not stupid.  So I guess it was the money that they used to cash.

. . .

Q:  Did you have an understanding with the cashiers [that] they could keep some of the proceeds of the check[s] as a fee for cashing the checks?

A:  No, Your Honor.

Q:  That was not an understanding you had?

A:  That was not an understanding that I had.

App. 39–40 (emphases added).

However, evidence presented at Jose's jury trial — which began three days after Adames's guilty plea — painted a considerably different picture regarding her role in the offense.  Specifically, three ICC employees testified that Adames initiated contact with them, negotiated the terms of the check cashing scheme, and solicited additional co-conspirators.  See, e.g., Supp. App. 50–52, 58–61, 94–95, 97–99, 107–09, 146–47, 178–79.

At Adames's sentencing hearing, the District Court found the ICC employees' statements to be credible and in "stark contrast" to Adames's suggestion at her guilty plea hearing that she was a "passive courier" who "simply delivered sealed envelopes, not knowing of their content[s]" — a suggestion that set up Adames's subsequent application for a minor role adjustment.  See App. 58–59.  Adames appears to concede that the information she provided to the District Court at her guilty plea hearing was false.  She contends, however, that her statements were not "material" for purposes of U.S.S.G. § 3C1.1 because the only "issue under determination" was whether there she was entering a knowing and voluntary plea to the charge against her — not the extent of her complicity.

6

See U.S.S.G. § 3C1.1 cmt. n.6. Adames additionally argues that there was "no evidence" to support the court's conclusion that her conduct was willful.

With respect to the materiality issue, we decline to interpret § 3C1.1 as narrowly as Adames would prefer. "A guilty-plea proceeding is not limited to establishing the factual basis for the plea; it also lays some of the groundwork for the sentence." United States v. Grigsby, 692 F.3d 778, 785 (7th Cir. 2012). Thus, "[t]he defendant's testimony during a plea colloquy . . . is highly relevant at sentencing." Id.; see also U.S.S.G. § 3C1.1 & cmt. n.1 (providing that the adjustment applies if the defendant's obstructive conduct occurred "with respect to the investigation, prosecution, or sentencing" of the instant offense of conviction (emphasis added)). Adames's false statements at her guilty plea hearing were material because the issue of her role in the offense would determine whether she qualified for a downward adjustment under U.S.S.G. § 3B1.2 — an adjustment that she ultimately pursued. Cf. United States v. Sanders, 162 F.3d 396, 402–03 (6th Cir. 1998) (defendant's plea proceeding statements were "material" under § 3C1.1 "insofar as [the information] related directly to his role in the offense").

Contrary to Adames's position, the preponderance of the evidence supports the District Court's determination that Adames's testimony regarding her role in the conspiracy did not result from confusion or mistake but was willfully offered in connection with — and with the intention of affecting —the length of her sentence. Cf. App. 59 (District Court stating its belief that Adames's "intent and purpose" was "to

7

make [the court] think that she was a mere courier"). Certainly, the District Court's determination was not clearly erroneous.[6]

III.

For the foregoing reasons, we will affirm the judgment of sentence.

---

[6] Having concluded that the District Court did not err by imposing the enhancement, we need not consider the Government's alternative argument that the error was harmless.