

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-18-2006

# USA v. De La Cruz

Precedential or Non-Precedential: Precedential

Docket No. 05-5554

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. De La Cruz" (2006). *2006 Decisions.* Paper 510.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/510

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEAL
FOR THE THIRD CIRCUIT

No. 05-5554

UNITED STATES OF AMERICA

v.

FERNANDO BATISTA DE LA CRUZ,

<u>Appellant</u>

On Appeal from the District Court
of the Virgin Islands
(D.C. Criminal No. 02-cr-00033-2)
District Judge: Hon. Raymond L. Finch, Chief Judge

Argued May 11, 2006

BEFORE: FISHER, COWEN and ROTH,* <u>Circuit Judges</u>

(Filed: August 18, 2006)

Micol L. Morgan, Esq. (Argued)
Ogletree, Deakins, Nash, Smoak
  & Stewart
1336 Beltjen Road, Suite 202
Charlotte Amalie, St. Thomas
USVI, 00802

    Counsel for Appellant

*The Honorable Jane R. Roth assumed senior status on
May 31, 2006.

Major Coleman, Esq. (Argued)
Office of the United States Attorney
United States Courthouse
5500 Veterans Building, Suite 260
Charlotte Amalie, St. Thomas
USVI, 00802-6924

      Counsel for Appellee

---

OPINION

---

COWEN, <u>Circuit Judge</u>.

      Fernando Batista De La Cruz challenges the district court's two-level upward adjustment of his sentence on the ground that he employed "special skills" in operating a fishing boat from Puerto Rico to St. Thomas, Virgin Islands to pick up and transport cocaine. We will reverse and remand for resentencing.

I.

      On November 18, 2001, Batista De La Cruz borrowed a twenty-foot powerboat from a friend to go from Puerto Rico to St. Thomas. He and passenger Bartolo Martes-Jimenez left Puerto Rico in the morning and used the boat to go fishing for lobster. After fishing, Batista De La Cruz piloted the boat to St. Thomas. While at St. Thomas, he picked up two fuel tanks which contained thirty-four kilograms of cocaine and stored them on the boat. He then piloted the boat approximately 1.5 miles south to an island off the coast of St. Thomas, Water Island.

      Officer Montclair Guishard stopped the boat near Water Island for traveling at a high rate of speed with a fish trap dangerously bouncing on the bow of the boat. He then called for back-up officers to assist in questioning Batista De La Cruz and Martes-Jiminez in Spanish. The officers determined that both men did not have fishing licenses and two of the six lobsters

2

caught were undersized.  Both men were arrested and charged with possession of undersized lobsters and fishing without a license in violation of V.I. Code Ann., tit. 12, §§ 319, 312.  Once the men were in custody, the officers took inventory of the vessel for safekeeping and accountability.  While taking inventory, the officers discovered the cocaine hidden in the modified gas containers.

Batista De La Cruz was charged with one count of conspiracy to possess cocaine with the intent to distribute and one count of possession with intent to distribute in violation of 21 U.S.C. §§ 841, 846 and 18 U.S.C. § 2.  He pled guilty to both counts.  In the presentence report, the Probation Office recommended a two-level enhancement pursuant to United States Sentencing Guideline § 3B1.3 for use of a special skill in piloting the boat from Puerto Rico to St. Thomas.  Batista De La Cruz objected to the enhancement.  The government originally concurred with his position, stating that the enhancement did not apply because Batista De La Cruz did not have boat handling training or any vessel pilot license.  The government ultimately changed its position and now asserts that the enhancement applies.

The report by the Probation Office recommending the two-level enhancement was based on an interview with Alvin Powell, Jr., an Environmental Enforcement Officer and a Certified Boating Safety Instructor.  After seeing a picture of the boat used by Batista De La Cruz, Powell opined that a layperson in the community would not be able to pilot that type of boat without having special skills.  A person piloting a similar boat would need to know how to ride the waves because of the freeboard (lowness) of the stern and port and starboard sides of the boat.  Powell also noted that the vessel may have been partially submerged at the time of interception due to the weight of the two men, the 34.4 kilograms of cocaine, the ice cooler with its contents, the large fish trap, and the two fuel tanks.  Powell noted that the waters are generally rough and there are shallow areas that must be avoided, such as sand banks and coral reefs.

The district court adopted the presentence report without any changes.  The two-level enhancement raised the applicable

offense level from 29, with a corresponding guideline sentencing range of 87 to 108 months, to 31, with a guideline sentencing range of 108 to 135 months. On December 14, 2005, the district court sentenced Batista De La Cruz to 108 months, with credit given for time served, and five years of supervised release.[1]

## II.

The district court had jurisdiction pursuant to 18 U.S.C. § 3241. We have jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291. This court reviews de novo a district court's legal interpretation of the Sentencing Guidelines. United States v. Urban, 140 F.3d 229, 234 (3d Cir. 1998). We review the district court's finding of facts for clear error. United States v. Lennon, 372 F.3d 535, 538 (3d Cir. 2004).

Section 3B1.3 advises a district court to increase a defendant's offense level by two levels "[i]f the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense . . . ." U.S. SENTENCING GUIDELINES MANUAL § 3B1.3 (2005). We have required a sentencing court to make two findings before imposing an upward adjustment for use of a special skill: (1) the defendant possesses a special skill; and (2) the defendant used it to significantly facilitate the commission or concealment of the offense. See United States v. Maurello, 76 F.3d 1304, 1314 (3d Cir. 1996).

A "'[s]pecial skill' refers to a skill not possessed by members of the general public and usually requiring substantial education, training or licensing. Examples would include pilots, lawyers, doctors, accountants, chemists, and demolition experts." U.S. SENTENCING GUIDELINES MANUAL § 3B1.3 cmt. n.4 (2005). Special skills are not, however, limited to those

---

[1] The judgment of conviction and sentence provides that Batista De La Cruz shall be given credit for time served from March 18, 2001. Because Batista De La Cruz was arrested on November 18, 2001, it appears that the date in the judgment is inaccurate.

4

obtained through formal education, training, or licensing. Special skills may be obtained through life experience and self-study. See United States v. Urban, 140 F.3d 229, 236 (3d Cir. 1998) (upholding district court's finding that Defendant employed special skills to make explosive devices based on his self-education and work experience).

In United States v. Calderon, 127 F.3d 1314 (11th Cir. 1997), the Court of Appeals for the Eleventh Circuit considered whether the district court properly found a special skill pursuant to § 3B1.3 when defendants captained a thirty-eight foot cabin cruiser containing cocaine on three occasions from the Bahamas to a predetermined location in Southern Florida. The defendants argued that no special skill was required because one could learn to pilot a thirty-eight foot boat and obtain a license after a few weeks training. The Eleventh Circuit rejected their argument, noting that the inquiry is on the skills members of the public possess generally, not what they could do after weeks of training. The court found that the defendants employed a special skill because they captained a boat on the high seas from the Bahamas to a predetermined location in Southern Florida, using a chart and compass at night without lights, while taking steps to elude detection from law enforcement agencies tasked with preventing the importation of drugs. See id. at 1339-40.

In the present case, Batista De La Cruz contends that the district court erred by finding he possessed a "special skill" pursuant to § 3B1.3 based on his ability to pilot and navigate a 20-foot power boat with a 40 horsepower engine from Puerto Rico to St. Thomas during the day. The parties supplemented the record with facts in response to a series of questions asked by this Court. The record indicates that the shortest possible journey between Puerto Rico and St. Thomas is thirty-five miles. The route taken by Batista De La Cruz appears to have been about fifty miles. A boat traveling from Puerto Rico to St. Thomas would not be out of sight of land. A vessel can reach St. Thomas through line-of-sight navigation by following the islands in a generally easterly direction until landfall on St. Thomas. Authorities found no marine radio, nautical charts, compasses, or other navigational instruments or aids on the boat operated by Batista De La Cruz. Markers are placed in the water

5

by the United States Coast Guard establishing an obvious channel for boaters to navigate and avoid shallow reefs, fish trapping areas, and other dangerous obstacles. The well-known markers are red and green buoys that mark the channel of passage. Boats are to pass them keeping the red buoys on their right when returning to port and the green on their right when leaving.

Based on the record, we are not persuaded that Batista De La Cruz employed a "special skill" within the meaning of § 3B1.3. There is no evidence that he received substantial education, training or licensing with boating. The record is also devoid of evidence that he frequently boated on his own to develop and hone his skills beyond those in the general public. Contrary to the suggestions in the Probation Office's report, there is no evidence that the trip to St. Thomas was particularly challenging on the day in question due to rough waters or other reasons.

Unlike the defendants in Calderon, Batista De La Cruz employed simple line-of-sight navigation to reach St. Thomas. The authorities found no charts, compasses or other navigational devices on his boat. In further contrast to Calderon, Batista De La Cruz operated his boat during day light hours. The record fails to reflect that he had any licensing, or even any special skill obtained through education, self-study, or experience, which would qualify as the predicate for an enhancement pursuant to § 3B1.3.

### III.

For the reasons set forth above, we will reverse the judgment of the district court and remand for resentencing consistent with this opinion.