

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-14-2007

# USA v. Navarro

Precedential or Non-Precedential: Precedential

Docket No. 05-4102

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Navarro" (2007). *2007 Decisions.* Paper 1546.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1546

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-4102

———

UNITED STATES OF AMERICA

v.

CHARLES NAVARRO,

Appellant

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 04-cr-00189)
District Judge:  Honorable R. Barclay Surrick

———

Argued September 11, 2006
Before:  FUENTES, FISHER and BRIGHT,* *Circuit Judges*.

(Filed:   February 14, 2007 )

—————————————

*The Honorable Myron H. Bright, United States Circuit
Judge for the Eighth Circuit, sitting by designation.

David L. McColgin (Argued)
Defender Association of Philadelphia
Federal Court Division
Suite 540, The Curtis Center
601 Walnut Street
Philadelphia, PA  19106
        *Attorney for Appellant*

Robert A. Zauzmer (Argued)
Julie M. Hess
Office of United States Attorney
615 Chestnut Street
Philadelphia, PA  19106
        *Attorneys for Appellee*

———

OPINION OF THE COURT

———

FISHER, *Circuit Judge*.

After entering an "open" plea to one count of possession of a firearm by a convicted felon, and two counts of simple possession of controlled substances, Charles Navarro was sentenced to 108 months imprisonment on August 19, 2005. Navarro appeals his sentence claiming that the District Court erred by applying an enhancement under the United States

Sentencing Guidelines ("Guidelines") section 2K2.1(b)(5)[1] in calculating the sentence. For the reasons that follow, we will affirm the District Court's sentence.

## I. Background

On April 15, 2003, a police officer noticed Navarro driving a Jeep in West Chester, Pennsylvania. Navarro was wanted on state charges of aggravated assault, and the officer attempted to effect a stop of Navarro's Jeep. But, Navarro did not comply. Instead, a pursuit ensued which ended with Navarro losing control of and flipping his Jeep. The Jeep came to a rest on its roof. Navarro then exited the Jeep, fled on foot, and managed to escape capture.[2]

---

[1]Section 2K2.1(b)(5) was renumbered in November 2006, and is now section 2K2.1(b)(6). *See* U.S. Sentencing Guidelines Manual § 2K2.1. Because this case is based on the Guidelines as they existed before November 2006, we use the numbering that existed prior to the change.

[2]In February 2003, an officer effected a traffic stop of Navarro's vehicle, intending to cite him for driving without a valid license. Navarro waited until the officer's vehicle was stopped, and then sped away. A few weeks later, an officer approached Navarro's Jeep, opened the door, and grabbed Navarro by the arm. Navarro refused to submit, and began to drive forward dragging the officer for approximately ten feet. This latter incident was the basis of the aggravated assault charge that predicated the most recent traffic pursuit.

Navarro left behind some incriminating evidence. Officers discovered a loaded, semiautomatic handgun on the roof of the Jeep, above the driver's seat. The day after the crash, a local resident provided the police with a jacket that was found near the scene of the crash. The jacket contained a quantity of marijuana (weighing 3.9 grams), and several packets of cocaine (weighing .31 grams).

Navarro was subsequently arrested and, after waiving his *Miranda* rights, gave a statement to officers. He admitted that he had been driving the Jeep during the pursuit and that the handgun and drugs found at the scene belonged to him. He also confessed to another crime, previously unknown to the officers. Navarro informed the police that he had obtained the gun in 2002 through a drug exchange. He had given an unknown person "three rocks" of crack and had received the gun in return. According to Navarro, he wanted the gun only for emergencies, and usually kept it buried in the ground. He had retrieved the gun the day before the pursuit with the intention of getting rid of it.

Navarro was initially charged by state authorities with two counts of possession of a controlled substance, but these charges were subsequently dismissed in favor of federal prosecution. A federal indictment, filed in the District Court for the Eastern District of Pennsylvania, charged Navarro with one count of possession of a firearm by a convicted felon, *see* 18 U.S.C. § 922(g), and two counts of simple possession of controlled substances (cocaine and marijuana), *see* 21 U.S.C. § 844(a). He was not, however, charged with possession of crack or possession with intent to distribute.

4

Navarro entered an "open" plea of guilty to the indictment, and therefore there was no plea agreement. He admitted during a plea colloquy that he had possessed both the firearm and the controlled substances found at the scene of the crash. He also acknowledged that he had given a statement to officers following his arrest, but he denied telling them how he had obtained the gun or admitting that he had engaged in a drug transaction. The District Court accepted the plea with this qualification.

A pre-sentence report recommended that Navarro's sentencing range be enhanced by four levels under section 2K2.1(b)(5) of the Guidelines, because the firearm had been possessed "in connection with another felony offense." *See* U.S. Sentencing Guidelines Manual § 2K2.1(b)(5). The predicate offense for the enhancement, according to the report, was simple possession of cocaine and marijuana. Defense counsel objected, arguing that the enhancement could not apply because the predicate offense, simple possession of a controlled substance, *see* 21 U.S.C. § 844(a), is not a felony. The Government conceded this point.[3] However, the Government asserted that

---

[3]It appears that the Government's concession of this point was unnecessary, and that the pre-sentence report's conclusion that the simple possession charges constituted "another felony offense" was correct. Simple possession is not a felony under 21 U.S.C. § 844(a) when there are no prior drug convictions because it is not punishable by more than one year in prison. *See* U.S. Sentencing Guidelines § 2K2.1 cmt. n.4. However, if a defendant has prior drug convictions, state or federal, simple possession is a felony because the defendant can be sentenced

5

the enhancement should nevertheless apply based on the felony offense of drug distribution, *see* 21 U.S.C. § 841, to which Navarro had confessed in his statement to the police.

A sentencing hearing was held in August 2005. The officer who had taken Navarro's statement at the police station testified that Navarro admitted that the handgun was obtained through a drug transaction. A recording and transcript of the statement introduced into the record confirmed the officer's recollection. Defense counsel argued that the evidence was insufficient to prove that the drug transaction had occurred. Additionally, defense counsel argued, notwithstanding the evidentiary deficiency, the offense could not support the enhancement under section 2K2.1(b)(5) because the firearm had been obtained as a direct result of the drug transaction. Essentially, the argument was that the offense was not sufficiently distinct from the firearms possession crime to qualify as "another felony offense" for purposes of section 2K2.1(b)(5).

The District Court overruled the objection. It concluded that Navarro's statement, made after he had been given his

to more than one year in prison. *See* 21 U.S.C. § 844(a). Navarro was convicted under Pennsylvania law of possession of a controlled substance with intent to deliver in 1996. Therefore, Navarro had a prior drug conviction and could be sentenced to more than one year in jail for the 2004 charges of simple possession of marijuana and cocaine. *See* 21 U.S.C. § 844(a); U.S. Sentencing Guidelines § 2K2.1 cmt. 4. Regardless, because the government conceded this argument we must analyze the case as it stands before us.

*Miranda* rights, was sufficient to prove that the drug transaction had in fact occurred.[4] Without directly addressing defense counsel's argument that the drug transaction could not qualify as "another felony offense," the District Court held that section 2K2.1(b)(5) should be applied.

The final Guidelines range, with the enhancement and based on an offense level of twenty-three and a criminal history category of VI, was 92 to 115 months.[5] The District Court, after hearing argument on the remaining factors under 18 U.S.C.

---

[4]Specifically, the District Court stated:

The statement given by [Navarro] to the authorities which has been offered into evidence, indicates that [Navarro], in fact, purchased this gun in a drug transaction. He gave someone crack cocaine in return for the gun. That statement was given after [Navarro] was Mirandized. There was no reason to believe that he wasn't being truthful with the officers, and I am satisfied that [Navarro] under the circumstances possessed a firearm in connection with this drug transaction and, therefore, the four level enhancement is appropriate.

[5]Navarro contends that without the four-level enhancement the Guideline range would have been 63 to 78 months based on a total offense level of nineteen and a criminal history category of VI.

§ 3553(a), imposed a term of imprisonment of 108 months.[6] Navarro timely filed this appeal.

## II. Discussion

The sole question raised on appeal is the propriety of the four-level enhancement under section 2K2.1(b)(5).[7] We have jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291. *See United States v. Batista De La Cruz*, 460 F.3d 466, 468 (3d Cir. 2006). We review *de novo* a district court's interpretation of the Guidelines. *Id.* (citing *United States v. Urban*, 140 F.3d 229, 234 (3d Cir. 1998)). Our review of a district court's finding of facts is for clear error. *Batista De La Cruz*, 460 F.3d at 468 (citing *United States v. Lennon*, 372 F.2d 535, 538 (3d Cir. 2004)).

It is relatively rare for a firearms offense to be unaccompanied by other illegal conduct. Possession of a gun is often a practical prerequisite for the sale of controlled substances or commission of other violent acts. Many defendants charged with unlawful possession of a firearm are

---

[6]The District Court sentenced Navarro to 108 months imprisonment for the violation of 18 U.S.C. § 922(g)(1). On the two counts in violation of 21 U.S.C. § 844(a), the District Court sentenced Navarro to 12 months of imprisonment for each of the violations to run concurrently with the 108 month sentence. Additionally, the District Court ordered three years of supervised release and a $300 special assessment.

[7]Navarro did not appeal the sufficiency of the evidence issue.

8

also guilty of, although sometimes not charged with, separate state or federal crimes.[8]  *See*, *e.g.*, *United States v. Loney*, 219 F.3d 281, 285-86 (3d Cir. 2000); *cf. United States v. Regans*, 125 F.3d 685, 686 (8th Cir. 1997) ("[A] firearm is a 'tool of the trade' for drug dealers . . . .").

To ensure that the final sentence reflects the defendant's culpability for these other offenses, the Guidelines provide for an increase in the base sentencing range when the firearm is possessed in connection with "another felony offense."  *See Loney*, 219 F.3d at 287-88; *see also United States v. McDonald*, 165 F.3d 1032, 1037 (6th Cir. 1999) (explaining that section 2K2.1(b)(5) "was created in response to a concern about the increased risk of violence when firearms are used or possessed during the commission of another felony") (emphasis omitted). Section 2K2.1(b)(5) of the Guidelines states, in pertinent part, as follows:

---

[8]*See*, *e.g.*, Bureau of Justice Statistics, U.S. Dep't of Justice, *Federal Firearms Offenders, 1992-1998* (2000), *available at* http://www.ojp.usdoj.gov/bjs/pub/pdf/ffo98.pdf; Bureau of Justice Statistics, U.S. Dep't of Justice, *Firearm Use by Offenders* (2001), *available at* http://www.ojp.usdoj.gov/bjs/pub/pdf/fuo.pdf; Bureau of Justice Statistics, U.S. Dep't of Justice, *Guns and Crime: Handgun Victimization, Firearm Self-Defense, and Firearm Theft* (1994), *available at* http://www.ojp.usdoj.gov/bjs/pub/ascii/hvfsdaft.txt; Bureau of Justice Statistics, U.S. Dep't of Justice, *Firearm Injury and Death from Crime, 1993-97* (2000), *available at* http://www.ojp.usdoj.gov/bjs/pub/pdf/fidc9397.pdf.

> If the defendant used or possessed any firearm or ammunition in connection with another felony offense . . . increase by 4 levels.

U.S. Sentencing Guidelines Manual § 2K2.1(b)(5). The commentary to the section explains that "[a]s used in subsection[] (b)(5) . . . 'another felony offense' . . . refer[s] to offenses other than explosives or firearms possession or trafficking offenses." *Id.* § 2K2.1 cmt. n.15. In other words, the enhancement should apply only when the predicate offense is distinct from the firearms possession crime of which the defendant was convicted.

The enhancement is most often applied in circumstances in which the firearm was employed during a drug transaction or violent crime, either to protect the defendant or to threaten or harm a victim. *See*, *e.g.*, *Loney*, 219 F.3d at 287. This case is atypical in this respect. The firearm here was neither used nor intended as a means of intimidation or protection, but rather was proffered as an item of trade. It was given to Navarro in exchange for the drugs, but it did not otherwise facilitate the drug distribution offense.

Navarro seizes on this distinction. He argues that, because possession of the firearm constituted an integral aspect of the drug distribution offense, that offense must be considered part of the underlying firearms possession crime – not "another felony offense" – and cannot support the enhancement under section 2K2.1(b)(5). He also claims that, even if the drug distribution qualifies as "another felony offense," the firearm was not possessed "in connection with" the drug distribution because it was not brandished or otherwise used to facilitate the offense.

10

## A.    "Another Felony Offense"

The primary argument Navarro raises against the enhancement is that the drug distribution in this case does not qualify as "another felony offense," separate from the firearms possession crime, because possession of the firearm formed an integral aspect of that offense.  We have addressed similar arguments in two previous cases:  *United States v. Fenton*, 309 F.3d 825 (3d Cir. 2002), and *United States v. Lloyd*, 361 F.3d 197 (3d Cir. 2004).  The reason that these cases were resolved differently – *Fenton* against application of the enhancement and *Lloyd* in favor of it – guides the resolution of this case.

### 1.    *Fenton*

The predicate offense in *Fenton* was burglary.  309 F.3d at 826-27.  The defendant had broken into a sporting goods store and stolen several firearms, and he was later convicted of unlawful possession of those firearms.  *Id.*  In calculating the recommended sentencing range, the district court found that the burglary constituted "another felony offense" and that the firearms had been possessed "in connection with" that offense. *Id.*  It therefore applied, over an objection by defense counsel, the enhancement under section 2K2.1(b)(5).  *Id.*

We reversed the district court's judgment of sentence. We held that the phrase "another felony offense," as used in section 2K2.1, requires a "distinction in time or conduct" between the predicate offense and the firearms possession crime. *Id.* at 827-28.  Specifically, possession of the firearm cannot constitute an integral aspect of the predicate offense; if it does, then the two offenses must be considered one and the same, and the predicate offense cannot be deemed "another felony offense"

11

for purposes of section 2K2.1(b)(5). *Id.* Possession of the firearm was an integral aspect of the predicate offense because Fenton possessed the guns because he had stolen them. *Id.* at 826-27. We summarized the holding in a single sentence: "[A] state law crime, identical and coterminous with the federal crime, cannot be considered as 'another felony offense' within the meaning of the Sentencing Guidelines." *Id.* at 826.

Of particular concern to this Court was the possibility of double-counting. The theft of the firearms in *Fenton* had already been used to establish the base sentencing range for the substantive offense (unlawful possession of a firearm) and to support an enhancement for possession of a "stolen" firearm. *Id.* at 827-28. To use the same conduct to support yet another enhancement, for possession of the firearm in connection with "another felony offense," seemed fundamentally unfair. *See also id.* at 828 ("[W]e are troubled by the fact that almost every federal weapons offense could be prosecuted simultaneously under state law.").

We noted that this interpretation accorded with the plain language of the provision, the presumption of lenity in the interpretation of criminal statutes, and the decisions of the Courts of Appeals for the Sixth and Seventh Circuits. *Id.* at 827-28; *see United States v. Sanders*, 162 F.3d 396, 399-400 (6th Cir. 1998) (concluding that enhancement for stealing firearms during burglary of pawn shop was improper because there was no separation of time or conduct); *United States v. Szakacs*, 212 F.3d 344, 351 (7th Cir. 2000) (holding that conspiracy to steal firearms was not sufficiently distinct from firearms possession to be considered "another felony offense" for purposes of section 2K2.1(b)(5)). We rejected contrary

12

decisions from the Courts of Appeals for the Fifth and Eighth Circuits. *Fenton*, 309 at 827-28; *see United States v. Luna*, 165 F.3d 316, 323-24 (5th Cir. 1999) (holding that enhancement could apply when firearm was obtained as a result of burglary); *United States v. Kenney*, 283 F.3d 934, 938-39 (8th Cir. 2002) (concluding that enhancement could apply when firearm was obtained as result of theft). Additionally, the majority in *Fenton* rejected the dissent's argument that the majority's concerns over double-counting were unfounded because possession of a firearm – even if it forms an integral aspect of the predicate offense – always has the independent potential to facilitate the predicate offense, warranting an additional enhancement in the sentence, *see Fenton*, 309 F.3d at 282-30 (Roth, J., dissenting). *See id.* at 827-28.

### 2.    *Lloyd*

*Fenton* was revisited and revised in *Lloyd*.    The defendant in *Lloyd* admitted to having placed a bomb under the car of an intended victim and pleaded guilty to unlawful possession of a destructive device in violation of 26 U.S.C. § 5861(d), and conspiracy to violate that provision in violation of 18 U.S.C. § 371.  361 F.3d at 199.  The district court found that the defendant had possessed the firearm[9] in connection with the felony offense of criminal mischief, *see* 18 Pa. Cons. Stat. § 3304, and applied the enhancement under section 2K2.1(b)(5). *Lloyd*, 361 F.3d at 199-200.  It overruled the defendant's

---

[9]A destructive device is considered a "firearm" under federal law.  *See*, *e.g.*, 18 U.S.C. § 921(a)(3), *cited in* U.S. Sentencing Guidelines Manual § 2K2.1 cmt. n.1; *see also* 26 U.S.C. § 5845(a).

13

objection that, under *Fenton*, the enhancement could not apply because possession of the firearm was an integral part of the offense. *Id.*

This Court affirmed. We implicitly acknowledged that a broad reading of *Fenton* might support the defendant's view: possession of the firearm constituted an integral part of the criminal mischief and therefore the latter offense should arguably not be considered "another felony offense" under the reasoning of *Fenton*. *Id.* at 200-02. However, the Court in *Lloyd* rejected this view in favor of a new, broader analysis of section 2K2.1(b)(5).

We held that a predicate offense can be considered "another felony offense" under section 2K2.1(b)(5) if it satisfies the test announced in *Blockburger v. United States*, 284 U.S. 299 (1932). *Lloyd*, 361 F.3d at 200-01. Under the *Blockburger* test, punishment may be imposed under two criminal statutes based on the same conduct if each of the two crimes requires proof of an element that the other does not. 284 U.S. at 304. The Court in *Lloyd* imported this analysis to section 2K2.1(b)(5), stating that an offense can be deemed "another felony offense" only if that offense and the firearms possession crime each have one element that the other does not. 361 F.3d at 200-01.

This definition, if taken alone, conflicts with *Fenton*. The offense in *Fenton* was burglary, and burglary and firearms possession each require proof of an element that the other does not. *Compare* 18 Pa. Cons. Stat. § 3502(a) (requiring proof of entry in a building, but not possession of a firearm, to establish burglary), *with* 18 U.S.C. § 922(I) (requiring proof of possession of a firearm, but not entry into a building, to establish unlawful

14

possession of a stolen firearm). Under the pure *Blockburger* test, and contrary to *Fenton*, burglary would be considered "another felony offense" and would support an enhancement under section 2K2.1(b)(5), no matter the particular circumstances of the offense. *See Lloyd*, 361 F.3d at 200-02.

The Court in *Lloyd* reconciled this potential conflict by interpreting *Fenton* as imposing an additional, factual layer of analysis over the *Blockburger* test. *Id.* It found support for this interpretation in the application notes to section 2K2.1, which excepts from the definition of "another felony offense" those crimes that constitute "explosives or firearms possession or trafficking offenses." U.S. Sentencing Guidelines Manual § 2K2.1 cmt. n.15. This exception, the Court held, reflected an intent to exclude from the definition of "another felony offense" those crimes that are so closely linked to firearms possession that they may themselves be deemed "firearms possession offenses." *Lloyd*, 361 F.3d at 200-01. If mere possession of the firearm was an integral aspect of the predicate offense, then that offense must be deemed the functional equivalent of a "firearms possession offense," meaning that the enhancement cannot apply. *Id.*

The decision in *Fenton* reflected this understanding. The defendant in *Fenton* had committed burglary by entering the sporting goods store with the intent to commit a crime therein. The crime at issue, the theft of the firearms, involved only the possession of the firearms; they were not brandished or otherwise used to facilitate the burglary. Possession of the firearms served no purpose other than satisfaction of an essential legal element of the offense. Under these circumstances, burglary was properly considered a "firearms possession

15

offense," precluding application of the enhancement. *Id.* (discussing *Fenton*).

However, the Court in *Lloyd* stressed that "the characterization of theft or burglary of a firearm as a 'firearms possession offense' without a doubt marks the extreme outer limits of that category." It noted that "the fact patterns of cases such as *Sanders*, *Szakacs*, and *Fenton* are practically *sui generis* in terms of the inapplicability of [section] 2K2.1(b)(5)." *Id.* at 204 n.5.

The predicate offense in *Lloyd*, criminal mischief, easily passed muster under the refined standard. It satisfied *Blockburger* because the two offenses each require an element that the other does not: criminal mischief requires proof of danger to third parties but not possession of a firearm whereas firearms possession requires proof of possession of a firearm but not danger to third parties. *Id.* at 204-05. It also satisfied *Fenton* because, as a factual matter, "the manner in which [the defendant] used the bomb extended far beyond simple possession." *Id.* The defendant's offense had involved not merely simple possession of the bomb but affirmative use of the device in an attempt to destroy property. It therefore could not be considered the functional equivalent of a "firearms possession offense." *Id.*

The Court cited with approval the decisions from the Sixth and Seventh Circuits in *United States v. King*, 341 F.3d 503 (6th Cir. 2003), and *United States v. Purifoy*, 326 F.3d 879 (7th Cir. 2003). *Lloyd*, 361 F.3d at 203-05; *see King*, 341 F.3d at 506-07 (holding that offense of assault, when committed with firearm, could be considered "another felony offense" for purposes of section 2K2.1(b)(5)); *Purifoy*, 326 F.3d at 880-81

16

(same).  In these cases, as in *Lloyd*, the firearm was not merely possessed, but was actually used by the defendant to threaten or attempt to harm the victim.  We concluded that "[t]he criminal mischief alleged here is more similar to the crime of assault (as in *King* and *Purifoy*) than it is to the crimes of burglary or theft that result in possession of firearms (as in *Sanders*, *Szakacs*, and *Fenton*)."[10]  *Id.*

### 3.  The Standard of *Lloyd* and *Fenton*

From *Lloyd* and *Fenton* a two-part standard may be distilled for determining whether an offense committed in connection with possession of a firearm may support an enhancement under section 2K2.1(b)(5).  The first part of the test, from *Blockburger*, is legal in nature and asks whether the predicate offense and the firearms possession crime each have an element that is not shared by the other.  *Lloyd*, 361 F.3d at

---

[10]In *Lloyd* we rejected the government's invitation to adopt a broader reading of section 2K2.1(b)(5), under which a crime would be considered "another felony offense" whenever the completion of that crime is temporally separate from possession of the firearm.  361 F.3d at 203.  This approach would preclude application of the enhancement only in those cases in which possession of the firearm occurred at the same time as commission of the other offense.  *Id.*  Adoption of this standard would arguably contravene *Fenton*, since the offense of burglary was completed when the defendant entered the building with the intent to commit a felony (whether or not he actually committed that felony) and therefore the possession of the firearms was temporally separate from that crime.  *Id.* at 203, 205.

17

204-05; *see also Blockburger*, 284 U.S. at 304. The second part of the test, from *Fenton*, is essentially factual in nature and asks whether more than mere possession of the firearm – brandishment or other use – was an integral aspect of the predicate offense.[11] *Lloyd*, 361 F.3d at 204-05; *see also Fenton*, 309 F.3d at 827-28. If these two questions are answered in the affirmative, then the four-level enhancement under section 2K2.1(b)(5) should apply. *See id.*

Judged by this standard, it is clear that the District Court properly applied the enhancement under section 2K2.1(b)(5). The predicate offense in this case was drug distribution under 21 U.S.C. § 841(a), a "felony offense" under the Guidelines. *See* 21 U.S.C. § 841(b)(1)(C); U.S. Sentencing Guidelines § 2K2.1 cmt. n.4.

The offenses of drug distribution and firearms possession satisfy the first part of the *Lloyd* standard, the *Blockburger* test. Dispensation of a controlled substance is an element of drug distribution but not of firearms possession; possession of a firearm is an element of firearms possession but not of drug

---

[11] Although not directly relevant to resolution of this case, it should be noted that the application notes of section 2K2.1 of the Guidelines have been amended, and the amendments became effective in November 2006. *See* U.S. Sentencing Guidelines Manual § 2K2.1 cmt. n.14 (providing for broader interpretation of "another felony offense," covering even those offenses that involve only simple possession of a firearm). We recognize that the amendments call into question our decision in *Fenton* for defendants who are sentenced under the current Guidelines and application notes.

18

distribution. *Compare* 21 U.S.C. § 841(a) *with* 18 U.S.C. § 922(g). The two offenses each have an element not shared by the other and therefore should be viewed as separate offenses for purposes of section 2K2.1(b)(5).

The offenses also satisfy the second part of the *Lloyd* standard, the *Fenton* test. The offense of drug distribution involves only the dispensation of a controlled substance; it does not require an exchange of something of value. *See*, *e.g.*, *United States v. Coady*, 809 F.2d 119, 124 (1st Cir. 1987). Navarro's possession of the firearm was therefore not an integral aspect of the offense. Because the offense did not involve mere possession of the firearm, it cannot be deemed the functional equivalent of a "firearms possession offense." The enhancement under section 2K2.1(b)(5) can apply.

Notwithstanding the relative simplicity of this analysis, the parties have engaged in an extensive debate over the meaning of *Lloyd* and its effect on *Fenton*. These discussions are almost wholly unnecessary because, even under a broad reading of *Fenton*, the enhancement in this case would be applicable.

The problem can be traced to a minor misunderstanding of what constituted the "other" felony offense in this case. The "other" offense in the case is described by the parties in various ways including drug trafficking, drug dealing, trading drugs for a gun, and drug distribution. In reality, the offense is drug "distribution." *See* 21 U.S.C. § 841. "Distribution" involves only dispensation, without the necessity of something being provided in return. *See id.* at 508; *see also*, *e.g.*, *Coady*, 809 F.2d at 124. Because receipt of something of value is not an essential element of drug distribution, Navarro's possession of

the firearm was not an integral aspect of the offense.[12] The offense therefore cannot be considered the functional equivalent of a "firearms possession offense."

**B.    "In Connection With"**

Having determined that drug distribution qualifies as "another felony offense" for purposes of section 2K2.1(b)(5), the only remaining question is whether the firearm was possessed "in connection with" that offense. This is easily answered in the affirmative.

The Supreme Court held, in *Smith v. United States*, 508 U.S. 223 (1993), that a defendant who trades a firearm for drugs is properly found to have "use[d]" the firearm "during and in relation to" the offense of drug distribution, warranting application of the mandatory minimum sentence of 18 U.S.C. § 924(c)(1). *Smith*, 508 U.S. at 241. The Court held that this provision requires, at a minimum, that the presence of the firearm "facilitat[es], or ha[s] the potential of facilitating," the offense. *Smith*, 508 U.S. at 238. The standard is clearly met when the defendant trades a firearm for drugs, the Court concluded, because without the firearm "the deal would not [be] possible." *Id.*; *see also United States v. Sumler*, 294 F.3d 579, 580 (3d Cir. 2002); *United States v. Cotto*, 456 F.3d 25, 28 (1st Cir. 2006).

We adopted the same standard for determining whether a firearm is possessed "in connection with" another felony

[12]We recognize that if an element of the felony offense of drug distribution required the receipt of something of value that under *Fenton* this would constitute mere possession.

offense for purposes of section 2K2.1 of the Guidelines. In *United States v. Loney*, we held that the enhancement should apply when possession of the firearm "facilitat[es], or ha[s] the potential of facilitating," the other offense. *See id.* at 287 (quoting *Smith*, 508 U.S. at 238). The enhancement was properly applied in *Loney* because the defendant had possessed a loaded firearm for protection during a drug transaction, demonstrating that the presence of the firearm facilitated the deal. *Id.* at 288.

Under this standard, there can be no doubt that Navarro's possession of the firearm during the drug transaction facilitated the offense. Navarro dispensed the drugs only so that he could secure the firearm in return; in other words, the drug distribution would not have occurred if Navarro had not possessed the firearm. The reasoning of *Smith*, adopted in *Loney*, is directly applicable here: the possession of a firearm facilitates a drug transaction when that firearm serves as an item of trade. *See Smith*, 508 U.S. at 238. The enhancement under section 2K2.1(b)(5) is thus applicable. *See Loney*, 219 F.3d at 287; *see also United States v. Garnett*, 243 F.3d 824, 829 (4th Cir. 2001) (holding that "trading a firearm for drugs" can support an enhancement under section 2K2.1) (citation omitted).

## III. Conclusion

The enhancement of section 2K2.1(b)(5) is properly applied when the defendant obtains a prohibited firearm through a drug trade. In such cases, possession of the firearm facilitates the offense of drug distribution but does not constitute an integral aspect of that offense. The District Court in this case properly found that, by exchanging drugs for the firearm, the defendant had possessed the firearm "in connection with another

21

felony offense," warranting application of the enhancement under section 2K2.1(b)(5). For the foregoing reasons, we will affirm the District Court's judgment of sentence.


BRIGHT, *Circuit Judge*, dissenting.

I respectfully dissent. In my judgment, this case rests on reading a guideline rule, U.S.S.G. § 2K2.1(b)(5), and its exception as set forth in Note 15, and determining whether Navarro's drugs for gun exchange falls within the exception. Note 15 explains that "another felony offense" in U.S.S.G. § 2K2.1(b)(5) "refer[s] to offenses other than explosives or firearms possession or trafficking offenses." U.S.S.G. § 2K2.1, cmt. n.15 (2004); *see United States v. Lloyd*, 361 F.3d 197, 201 (3d Cir. 2004) (Note 15 (then Note 18) categorically excludes firearm possession and trafficking offenses from definition of another felony offense). I agree with Navarro's contention in this case that his bartering drugs for a gun constitutes a means of possessing a firearm such that the enhancement cannot apply under Note 15.

In *United States v. Fenton*, 309 F.3d 825, 828 (3d Cir. 2002), this court refused to apply the same enhancement when the defendant acquired the firearms he was convicted of possessing by stealing them. Then Judge Alito explained in *Lloyd* that *Fenton* stands "for the proposition that, where a defendant is convicted for possession of firearms resulting from a theft of those same firearms, that theft is effectively a 'firearms possession . . . offense' . . . since that crime necessarily involves a taking and carrying away of the firearms involved." *Lloyd*, 361 F.3d at 202; *see also United States v. Szakacs*, 212 F.3d

22

344, 350 (7th Cir. 1999) (declining to apply enhancement to burglary when items stolen are firearms); *United States v. Sanders*, 162 F.3d 396, 399 (6th Cir. 1998) (same). Just as the defendant in *Fenton* stole the firearms he was convicted of possessing, Navarro purchased with drugs the firearm he was convicted of possessing. The illegal means by which both men came into possession of the firearms cannot be separated from the possession itself; both crimes necessarily involve possession and taking and carrying away of the gun.[13] In light of such precedent, in my view, it is incorrect for the majority to hold that buying a gun through illegal means justified the enhancement, when, as in *Fenton*, stealing a gun did not.

Application of the exception in Note 15 to the present case is also consistent with this court's decision in *Lloyd*. In that case, the defendant placed a bomb under a car and ignited it (without causing an explosion because of a malfunction). *Lloyd*, 361 F.3d at 199. The court determined that possession of the homemade bomb warranted enhancement under § 2K2.1(b)(5). *Id.* at 205. Although the defendant in that case possessed the explosive device while he placed it under a car and ignited it, it was not, as here and as in *Fenton*, the means through which he came into possession of the bomb. *See Lloyd*, 361 F.3d at 199.

Here, the majority stresses that the elements of the offense of drug "distribution" does not require an exchange of

---

[13]As explained in *Szakacs*, although neither of these crimes in generic form necessarily include possession of a firearm, the crimes as they occurred in these cases necessarily included the possession or trafficking of a firearm. *See* 212 F.3d at 350.

23

something of value, rather than focusing on the facts as they occurred in this case.  In *this* case, firearm possession was integral to Navarro's drugs for guns exchange – the exchange was the means through which he came into possession of the gun.  There is no indication that Navarro brandished the gun, threatened anyone with it, or otherwise engaged in any behavior beyond mere possession.

For these reasons, I respectfully dissent and would reverse the District Court's application of the enhancement under U.S.S.G. § 2K2.1(b)(5).