**UNITED STATES of America**

**v.**

**Michael KYEREME, aka Michael Appiahkyeremeh, aka Appakyeremeh**

Michael Kyereme, Appellant.

No. 09–1354.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) March 11, 2010.

Opinion filed: March 23, 2010.

Deborah J. Gannett, Esq., George S. Leone, Esq., Caroline A. Sadlowski, Esq. Samuel A. Stern, Esq. Office of United States Attorney, Newark, NJ, for United States of America.

Jeffrey S. Mandel, Esq., Morristown, NJ, for Appellant.

Before: AMBRO, SMITH and ALDISERT, Circuit Judges.

OPINION

AMBRO, Circuit Judge.

Michael Kyereme pled guilty to mail fraud and tax evasion in July 2008. He now challenges the District Court's sentence of 59 months' imprisonment, arguing that the District Court erred in applying a two-level upward adjustment under § 3B1.3 of the Sentencing Guidelines. We affirm.[1]

---

1. The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction pursu-
   ant to 18 U.S.C. § 3742.

## I.

Kyereme was an independent contractor hired to provide information technology ("IT") support to the City of Newark, New Jersey. As an independent contractor, Kyereme assisted Newark employees with computer-related problems. When Kyereme could not resolve a computer problem, he was authorized to communicate with Cisco Systems, Inc. ("Cisco") for additional technical assistance and, if necessary, to request replacement parts for the City's computers.

From 2002 through 2007, Kyereme falsely reported to Cisco that large numbers of computer parts were malfunctioning and required replacement. When Cisco sent replacement parts, however, Kyereme failed to return many of the allegedly inoperable parts. When he did return parts to Cisco, they were different Cisco parts or parts from other computer companies, all of which were of lesser value than the replacement parts. Kyereme sold the fraudulently obtained Cisco parts to computer resellers outside of New Jersey. His fraudulent scheme resulted in losses to Cisco of more than $4,000,000.

In July 2008, Kyereme pled guilty to one count of mail fraud (in violation of 18 U.S.C. § 1341) and one count of tax evasion (in violation of 26 U.S.C. § 7201). The District Court determined that Kyereme's offense level was 25, which included a two-level upward adjustment pursuant to U.S.S.G. § 3B1.3 because Kyereme "used a special skill[ ] in a manner that significantly facilitated the commission or concealment of the offense [.]" [2] With a criminal history of category I, his Guidelines range was 57 to 71 months' imprisonment. The Court sentenced Kyereme to 59 months' imprisonment, and he timely appealed.

## II.

Although the Sentencing Guidelines are now advisory, district courts must still correctly calculate the Guidelines range at the first step of our Court's post-*Booker* sentencing procedure. *See United States v. Gunter,* 462 F.3d 237, 247 (3d Cir.2006). "[A] sentencing court is required to make two findings before imposing an upward adjustment for use of a special skill [under U.S.S.G. § 3B1.3]: '(1) the defendant possesses a special skill; and (2) . . . used it to significantly facilitate the commission or concealment of the offense.'" *United States v. Bond,* 581 F.3d 128, 140 (3d Cir. 2009) (*quoting United States v. Batista De La Cruz,* 460 F.3d 466, 468 (3d Cir.2006)) (second alteration in original). We review a district court's interpretation of the Guidelines *de novo,* including whether a defendant possesses a "special skill" within the meaning of § 3B1.3. *See United States v. Urban,* 140 F.3d 229, 234 (3d Cir.1998). We review a district court's finding that a defendant used a special skill "in a manner that significantly facilitated the commission or concealment of the offense" for clear error. *See Bond,* 581 F.3d at 141; *Batista De La Cruz,* 460 F.3d at 468.

## III.

First, we agree that Kyereme has a "special skill" within the meaning of § 3B1.3. *See* U.S.S.G. § 3B1.3 cmt. n. 1 (a "special skill" is one "not possessed by

**2.** The District Court determined that the two-level upward adjustment was also warranted because Kyereme "abused a position of public or private trust." U.S.S.G. § 3B1.3. Because we agree that he used a special skill to facilitate significantly the commission and/or concealment of his crimes, we need not address this alternative basis for the § 3B1.3 adjustment.

The District Court also denied Kyereme's request that the mail fraud and tax evasion counts be grouped pursuant to U.S.S.G. § 3D1.2(c). He does not challenge that ruling on appeal.

members of the general public and usually requir[es] substantial education, training or licensing"). Kyereme holds an undergraduate degree in information systems, a masters of science degree, and an MBA. He has completed numerous computer and network training courses, and holds several professional licenses, including certifications as a Cisco Network Associate and a Microsoft Systems Engineer. Finally, Kyereme has been employed in the IT field since 1991, including as a computer engineer, project manager, IT manager, senior engineer, network engineer, and implementation engineer. *See Urban,* 140 F.3d at 236 (section 3B1.3 is "applicable to a person who has developed a special skill through ... his or her work experience"). Thus, contrary to Kyereme's suggestion, his knowledge of computers and systems management cannot be equated with that of a typical computer user. *Cf. United States v. Lee,* 296 F.3d 792, 794–95, 799 (9th Cir.2002) (defendant who created an internet website to obtain registration fees for a phony event did not possess a "special skill," where the defendant simply copied and pasted "scripts" from a legitimate website to create the phony website).

Kyereme's central complaint is that he did not "use[ ]" a special skill "in a manner that significantly facilitated the commission or concealment of the offense." *U.S.S.G.* § 3B1.3. In particular, he notes that (1) he did not identify himself as a Certified Cisco Network Associate when he requested replacement computer parts (thus, Cisco purportedly did not rely on his certification in approving the shipments of replacement parts); and (2) he typically used email, "the most rudimentary computer skill," to request replacement parts

from Cisco. Accordingly, Kyereme contends that any City of Newark employee could have committed a similar fraudulent scheme, regardless of his or her technical knowledge of Cisco's products.

We disagree. As the District Court found, Kyereme's technical knowledge of computers and Cisco products significantly facilitated his crimes by: (1) making his requests for replacement parts credible (*e.g.,* by using technical language to describe fabricated problems with computer parts); and (2) allowing him to identify the types of parts that "might routinely break down" and to "group parts that are breaking down," thus avoiding suspicion by Cisco. The fact that Kyereme communicated with Cisco by email, and that he did not identify himself as a Certified Cisco Network Associate when requesting replacement parts, even cumulatively does not render the Court's findings clearly erroneous. As Cisco's representative testified at sentencing, to become certified as a Cisco Network Associate, an individual must pass examinations to "demonstrate a level of technical proficiency with [Cisco] products," including their configuration and design. And, as the Court explained, Kyereme's familiarity with and technical knowledge of Cisco products "permitted him to talk the talk and be afforded the credibility he was afforded by Cisco personnel," thereby facilitating the commission and concealment of his fraud.[3]

For the foregoing reasons, we affirm Kyereme's sentence.

---

3. For example, in one email request to Cisco, Kyereme wrote: "Problem Details: 7600–SIP–600 not responding/dead. Has been deactivated/reactivated and even reseated. 6513 chasi has also been rebooted still no good need RMA." As a Cisco representative testified at sentencing, she understood this message to indicate that Kyereme had already taken steps to troubleshoot the problem (to no avail, of course, thus necessitating a replacement part).