NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 09-2235

———


UNITED STATES OF AMERICA

v.

JOSE OCTAVIO PEREZ,
                              Appellant


———


On Appeal from the United States District Court
for the District of New Jersey
(D.C. Crim. No. 1-08-cr-00593-001)
District Judge: Hon. Noel L. Hillman


———


Submitted Under Third Circuit LAR 34.1(a)
June 29, 2010

Before:  SLOVITER, BARRY and HARDIMAN, Circuit Judges

(Filed July 2, 2010)

———


OPINION

SLOVITER, Circuit Judge.

Appellant Jose Octavio Perez ("Perez") pled guilty to illegal possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). He appeals the District Court's imposition of a four-level sentencing enhancement pursuant to U.S.S.G. § 2K2.1(b)(6).[1] We will affirm.

**I.**

In January 2008, police officers in Camden, New Jersey, observed a group of young men standing on the corner of two access roads inside an apartment complex located in a dangerous, high crime, and high drug trafficking area. The officers saw one of the men, Perez, display a handgun and then place it into his waistband upon seeing the police. Perez began running away from the officers while the other men quickly walked away from the area. During a foot pursuit, two police officers saw Perez reach into his pants pocket and discard an unknown object. One of the officers described the object as the "size of a deck of playing cards," App. at 82, while the other officer described it as "a small plastic bag, like [a] sandwich bag" that was "[s]maller than a fist," App. at 122. The area where Perez dropped the object was blocked by traffic barricades and was not accessible to vehicles.

Perez continued running and was eventually tackled to the ground. The handgun

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction over Perez's challenge to his sentence under 18 U.S.C. § 3742(a).

fell from Perez's waistband and "tumbled onto the concrete," where it was recovered. App. at 70. The officers then retraced the path of their foot chase in an attempt to recover the object that Perez had discarded. Within minutes of returning to the spot where they saw Perez discard the object, the officers recovered a plastic bag containing forty sealed bags of crack cocaine.

State charges against Perez were dismissed in favor of federal prosecution, and Perez was indicted and pled guilty to one count of illegal possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). In the plea agreement, the Government reserved the right to seek a four-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(6), which applies when "the defendant used or possessed any firearm or ammunition in connection with another felony offense." The Government argued that the enhancement was appropriate because "Perez was in possession of – and attempted to discard during a foot chase with law enforcement authorities – forty (40) heat-sealed bags of a substance that field-tested positive for cocaine . . . ." App. at 20 ¶ 4. The parties agreed that if the District Court applied the enhancement, the total offense level would be 27, and if it did not, the total offense level would be 23.

The Presentence Investigation Report ("PSR") stated that a four-level enhancement was not warranted under § 2K2.1(b)(6) and calculated a total offense level of 23. In recommending against the enhancement, the PSR noted that an officer reported "low illumination" during the foot chase, such that he was "unable to see what the small

3

item [was] that Perez threw to the ground," PSR ¶ 16, and further noted that Terrell L. Allen ("Allen"), an acquaintance of Perez, signed a sworn affidavit stating the following:

> On the date [that] Jose O. Perez was arrested for drugs and a firearm[,] the drugs that were found w[ere] mine. When state police chased Jose he ran by me and I threw my drug[s] up in the air trying to roof them but they fell down and hit the ground and I ran. After they caught Jose they retraced the[ir] steps and found my drugs and put them on Jose. I am writing this of my own free will, no one is making or threatening me to do this.

App. at 222. The Government objected to the PSR's recommendation and, in support of the sentencing enhancement, stated its intention to prove by a preponderance of the evidence that Perez possessed and attempted to discard the cocaine.

The District Court held a two-day evidentiary hearing during which the Government introduced the testimony of the police officers and of Allen, the affiant, as well as documentary evidence including ground and aerial photographs of the area where the foot pursuit took place. The police officers testified to the facts as previously described. Allen testified to the substance of his affidavit and marked an aerial photograph to show where he was standing when he "roofed" his drugs, i.e., tried to throw them on the roof of an adjacent building. He testified that as he did so, a vehicle "rolled right by." App. at 143. According to Allen, the drugs hit "the tip of the roof," App. at 146, and fell "[a]nywhere from five to [ten] feet" from the building, App. at 147. He testified that the building onto which he tried to "roof" his drugs did not appear in a photograph of the area where the officers said they recovered the cocaine.

The District Court did "not find the testimony of Mr. Allen to undermine that [of

4

the police officers]," App. at 174, and found that Allen "probably did have some drugs with him, probably did seek to roof them, and probably honestly believes that the drugs that were found were his," App. at 175. The District Court concluded, however, that Allen "place[d] the location of [his] drugs . . . at least a block away" from where the officers testified they recovered the bag of cocaine. App. at 175. The District Court found "no way that Mr. Allen was the source" of the recovered drugs because "[Allen] would have had to have hurled them perhaps [fifty] to [seventy-five] yards, not consistent with his own testimony about attempting to roof them." App. at 176.

In addition, the Court noted that a vehicle "could not have driven past him if he was standing next to the building where [the officers] sa[id] they [found] the drugs." App. at 175. The Court credited the police officers' testimony, finding "nothing in the record and nothing in [the police officers'] demeanor . . . to suggest that [they] were testifying untruthfully . . . ." App. at 176. Having found that the cocaine belonged to Perez, the District Court imposed the sentencing enhancement in U.S.S.G. § 2K2.1(b)(6) and sentenced Perez to 96 months imprisonment, below the Guidelines range of 100 to 120 months.

## II.

We review a district court's factual findings for clear error and review de novo a district court's interpretation of the Sentencing Guidelines. *United States v. Navarro*, 476 F.3d 188, 191 (3d Cir. 2007) (citations omitted). "A finding is 'clearly erroneous'

5

when[,] although there is evidence to support it, the reviewing [body] on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Grier*, 475 F.3d 556, 570 (3d Cir. 2007) (en banc) (citation and quotation omitted).

### III.

Perez "does not dispute" that if the cocaine recovered by the officers "belonged to him, the § 2K2.1(b)(6) enhancement would apply." Appellant's Br. at 17. Perez argues instead that the evidence "did not affirmatively establish that the drugs recovered . . . belonged to him." Appellant's Br. at 15. He submits that the drugs "could have been discarded by any number of individuals" such as Allen or "any number of other people" in the apartment complex. Appellant's Br. at 22. Perez also challenges the District Court's credibility determinations.

The evidence supports the District Court's finding that the cocaine belonged to Perez and thus supports imposition of the § 2K2.1(b)(6) enhancement. First, there was evidence that the cocaine did not belong to Allen. Although Allen thought the cocaine was his, Allen described his location at "the next street over" from where the officers had observed Perez discard the object. App. at 146. Allen testified that the building onto which he tried to "roof" his drugs did not appear in a photograph of the area where the officers chased Perez and recovered the cocaine. His description of a vehicle "roll[ing] right by," App. at 143, is consistent with his presence a block away.

6

Second, there was evidence that the cocaine in fact belonged to Perez. The officers testified that they saw Perez discard an object matching the description of the cocaine during their pursuit. When they retraced their steps after apprehending Perez, they recovered the cocaine within minutes. The District Court credited the officers' testimony, and so must we. *See United States v. Kole*, 164 F.3d 164, 177 (3d Cir. 1998) ("Credibility determinations are the unique province of a fact finder . . . ."); *United States v. Bethancourt*, 65 F.3d 1074, 1078 (3d Cir. 1995) ("[W]e will not review a district court's credibility determination.") (citation omitted). We are not left "with the definite and firm conviction that a mistake has been committed," *Grier*, 475 F.3d at 570 (citation and quotation omitted), and conclude that the District Court's finding that the cocaine belonged to Perez was not clearly erroneous. The application of the sentencing enhancement in § 2K2.1(b)(6) was therefore appropriate.

**IV.**

For the above-stated reasons, we will affirm the judgment of sentence.