[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-14578
Non-Argument Calender
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 21, 2012
JOHN LEY
CLERK

D.C. Docket No. 3:10-cr-00097-HES-JBT-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JOSEPH ULYSSES GRANT, IV,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(June 21, 2012)

Before TJOFLAT, CARNES and KRAVITCH, Circuit Judges.

PER CURIAM:

Joseph Grant defrauded mortgage lenders, and he was convicted of two

counts of wire fraud. He appeals his 30-month prison sentence for those convictions, contending that it is procedurally unreasonable because the district court miscalculated his guidelines range.

I.

Grant, a former loan officer for Principal Mortgage and a former mortgage broker for Sunny Mortgage, started his own company, Joe-Can-Do-It.Net. Grant's company marketed real estate and processed mortgages, specializing in "100% Financing w/ Bad Credit [and] No Down Payment Home Purchase[s]." That speciality was tied to Grant's scheme to defraud lenders. Grant's clients did not have enough money to make down payments on home purchases, so he falsified information in their loan applications and real estate purchase agreements to mislead lenders into believing that his clients planned to make down payments. Because of Grant's fraud, lenders approved home loans for what they believed to be between 80% and 90% of a home's purchase price but that were actually for 100% of that price.

A federal grand jury indicted Grant on four counts of wire fraud in violation 18 U.S.C. § 1343. Grant pleaded not guilty. During the trial, the district court granted the government's motion to dismiss one of the counts, and the jury found Grant guilty on two counts and not guilty on one count. The presentence

investigation report recommended a base offense level of 7 under United States Sentencing Guidelines § 2B1.1 (Nov. 2010). It added 14 levels under § 2B1.1(b)(1)(H) because the actual loss from Grant's scheme was greater than $400,000 but not more than $1,000,000. It added 2 more levels under § 3B1.3 because Grant used a "special skill" to execute the scheme. Grant's recommended total offense level was 23. Combined with his recommended criminal history category of II, the recommended guidelines range was 51–63 months in prison.

Grant objected to several things in the PSR, including the actual loss amount and the 2-level special skill enhancement. About the actual loss amount, the government and Grant stipulated that the actual loss from Grant's scheme was between $120,000 and $200,000. About the special skill enhancement, Grant argued that he did not use a special skill in perpetrating the fraud because (1) he had no formal education, training, or licensing and (2) "his job was . . . fill[ing] out loan applications, which does not require any kind of special skills." The government argued that the special skill enhancement was correct because Grant had used a skill not possessed by members of the general public—"he understood the mortgage industry, how it operated, and how to manipulate the loan process to successfully obtain approvals in mortgage loans. . . . He knew where the holes were."

3

The court overruled Grant's objection, finding that he had used a special skill in executing his mortgage-fraud scheme. It modified the PSR by reducing the actual loss enhancement from 14 levels to 10 levels to reflect the parties' stipulation. The result was a new total offense level of 19 and a new guidelines range of 33–41 months in prison. The court adopted the modified PSR, varied downward to give Grant credit for time served, and sentenced him to 30 months in prison on each count, with each sentence to run concurrently.

## II.

Grant contends that the district court procedurally erred in imposing his 30-month prison sentence, arguing that the court miscalculated his guidelines range because he did not use a special skill to commit mortgage fraud.[1] We review a sentence for reasonableness and "ensure that the district court committed no significant procedural error, such as improperly calculating the guidelines range." United States v. White, 663 F.3d 1207, 1215 (11th Cir. 2011). In

---

[1] Grant also argues that a district court cannot rely on evidence at trial to conclude that an enhancement applies and, because the government did not present evidence at sentencing, the government did not meet its burden of proving that the special skill enhancement applied in this case. Our precedent forecloses Grant's argument. See United States v. White, 663 F.3d 1207, 1216 (11th Cir. 2011) ("When a defendant challenges the factual basis that the PSR sets forth for his sentence, the burden is on the government to prove the disputed facts by a preponderance of the evidence. The district court may base its findings of fact at sentencing on evidence presented at trial, undisputed statements in the PSR, and evidence presented at the sentence hearing." (emphasis added) (citation omitted)).

determining whether the district court improperly calculated the guidelines range, we review for clear error the court's factfindings and review de novo its application of the law to those facts. United States v. De La Cruz Suarez, 601 F.3d 1202, 1219 (11th Cir. 2010). "When a defendant challenges the factual basis that the PSR sets forth for his sentence, the burden is on the government to prove the disputed facts by a preponderance of the evidence. The district court may base its findings of fact at sentencing on evidence presented at trial, undisputed statements in the PSR, and evidence presented at the sentence hearing." White, 663 F.3d at 1216.

The sentencing guidelines provide a 2-level enhancement "[i]f the defendant . . . used a special skill[] in a manner that significantly facilitated the commission or concealment of the offense." U.S.S.G. § 3B1.3. The commentary defines a "special skill" as one "not possessed by members of the general public and usually requiring substantial education, training or licensing. Examples would include pilots, lawyers, doctors, accountants, chemists, and demolition experts." Id. cmt. 4. "If an 'average person off the street' does not possess the skill, then the skill is considered 'special' for the purposes of applying the enhancement." De La Cruz Suarez, 601 F.3d at 1219 (quoting United States v. Calderon, 127 F.3d 1314, 1339 (11th Cir. 1997)). A special skill does not require formal education, see United

States v. Foster, 155 F.3d 1329, 1331 (11th Cir. 1998), and "may be obtained through life experience and self study," United States v. Batista De La Cruz, 460 F.3d 466, 468 (3d Cir. 2006).

The evidence presented at trial and undisputed statements in the PSR show that Grant gained a detailed knowledge of loan-application and loan-processing procedures during the three years he worked as a loan officer or mortgage broker before committing mortgage fraud. That knowledge is a special skill within the meaning of U.S.S.G. § 3B1.3 because "an average person off the street does not possess" it. De La Cruz Suarez, 601 F.3d at 1219 (quotation marks omitted).

The evidence showed that Grant fraudulently inflated his clients' monthly incomes and bank-account balances on their loan applications, and three mortgage underwriters testified that a client's monthly income and bank-account balance influence a lender's decision to approve a loan. The evidence also showed that Grant had his clients execute real estate purchase agreements that listed artificially inflated purchase prices. An underwriter testified that lenders review copies of those agreements "to know how much the property was actually being sold for and what the terms of the purchase agreement were to make sure they were in line with [their] guidelines." Also, one of the clients that Grant used in his scheme testified that Grant gave her cash in the amount of the fraudulent, nonexistent down

6

payment and told her to buy a cashier's check in that amount at her bank. She told the jury that Grant said she had to present that check at closing "to show that th[e] money came from [her]." An underwriter testified that "any money that's due at closing, that's supposed to come directly from the borrow[er] and supposed to come out of the bank account that's listed on the [the borrower's loan application]." That evidence was enough to show that Grant used his knowledge of loan-processing and loan-application procedures, which is a special skill, to commit mortgage fraud. The district court did not err in applying the 2-level special skill enhancement.

**AFFIRMED.**